USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   1/20/26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMARI J. MOODY,

          Plaintiff,

      -against-

STARBUCKS CORPORATION,

               Defendant.

25-CV-8739 (PAE) (BCM)

**OPINION AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiff Amari J. Moody, proceeding pro se, filed this action against his former employer Starbucks Corporation (Starbucks) on October 22, 2025, alleging claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111 *et seq.*, the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, all arising out of the termination of his employment in August 2025, "while Plaintiff's approved medical leave . . . remained active." Compl. (Dkt. 1) at 1.[1]

Now before the Court is defendant's motion (Dkt. 37) to dismiss plaintiff's ADA claim, for failure to exhaust required administrative remedies, and to compel arbitration of all of plaintiff's claims (including the ADA claim, if not dismissed). For the reasons that follow, the

---

[1] The Complaint lists two additional claims: for "spoliation" under Fed. R. Civ. P. 37(e), and for "bad-faith investigation/obstruction," based on plaintiff's allegation that "HR and E&C" (which the Court understands to be departments or business units within Starbucks), acting in "collaboration," "destroyed independence [sic] and concealed evidence." Compl. at 1-2. Rule 37(e) governs sanctions in the district courts for failure to preserve electronically stored evidence. It is well-settled, however, that Rule 37(e) "does not provide [a plaintiff] with a cause of action." *George & Co. LLC v. Spin Master Corp.*, 2020 WL 3865098, at *8 (E.D.N.Y. July 7, 2020); *see also Mazzei v. The Money Store*, 2020 WL 7774492, at *9 (S.D.N.Y. Dec. 30, 2020) ("Plaintiff cannot bring an independent claim under Rule 37, because Rule 37 does not create a cause of action."), *aff'd,* 62 F.4th 88 (2d Cir. 2023). Likewise, there is no cause of action for collaborating or conspiring to violate the federal discovery rules. *See Digene Corp. v. Ventana Med. Sys., Inc.*, 476 F. Supp. 2d 444, 452 (D. Del. 2007) ("Because the Federal Rules of Civil Procedure do not create a private cause of action, Digene's claim of civil conspiracy to evade discovery obligations necessarily fails.").

branch of defendant's motion seeking to compel arbitration will be granted, and this action will be stayed pending the outcome of the arbitration.

## I.   BACKGROUND

### A.   Factual Background

Starbucks operates a nationwide chain of retail coffee shops, including in New York. Compl. at 1; Declaration of Shami Marangwanda (Marangwanda Decl.) (Dkt. 39) ¶ 2. Plaintiff Moody was first hired by Starbucks in 2019. Between 2019 and 2023, he worked "on and off with Starbucks at various stores in Georgia." Marangwanda Decl. ¶ 6. Beginning on October 31, 2023, he applied for a new Starbucks position through its online application process, known as "Eightfold." *Id*. ¶ 7 & Ex. A (completed online application). On April 8, 2024, plaintiff was sent a formal offer of employment from Starbucks, by email, *see id*. ¶ 10 & Ex. C, at which point he was required to "complete the online Employee Onboarding process," *id*. ¶ 11, through another online system, called "Taleo." *Id*.

As part of the onboarding process, plaintiff was "required to view and sign" the Starbucks Mutual Arbitration Agreement (MAA), "as a condition of his employment." Marangwanda Decl. ¶ 14. Plaintiff did so – electronically – on the same day he received his offer letter, by "enter[ing] his account login password to confirm his electronic signature" on the MAA. *Id*. ¶ 14 & Ex. F (electronically signed MAA dated April 8, 2024). Plaintiff was then sent a confirmation email thanking him for completing the MAA and attaching a copy for his records. *Id*. Ex. G. Shortly thereafter, plaintiff began working at a Starbucks store in Braselton, Georgia. *Id*. ¶ 17.[2]

---

[2] Marangwanda is Starbucks' Director of Recruiting. Marangwanda Decl. ¶ 1. As part of her responsibilities, she "oversee[s] [the] Starbucks application tracking and onboarding system for employees," has "access to business records and personnel records of current and former partners," and has "the ability to access and view all applicants' Eightfold and Taleo histories," which are Starbucks business records. *Id*. ¶ 3.

### B.     The Mutual Arbitration Agreement

The MAA states, in pertinent part:

Starbucks and I agree to use binding individual arbitration to resolve any "Covered Claims" that arise between me and Starbucks, its subsidiaries and related companies, and/or any current or former employee of Starbucks or a related company (collectively, "Starbucks"). "Covered Claims" are those brought under any statute, local ordinance, or common law relating to my employment, including those concerning any element of compensation, harassment, discrimination, retaliation, recovery of bonus or relocation benefits, leaves of absence, accommodations, or termination of employment.

**Except as provided herein, I understand and agree that arbitration is the only forum for resolving Covered Claims, and that both Starbucks and I waive the right to a trial before a judge or jury in federal or state court**.

\* \* \*

Except as provided below, Starbucks and I agree that the Arbitrator – and not a court or agency – shall have exclusive authority to resolve any dispute regarding the formation, interpretation, applicability, enforceability, or implementation of this Agreement, including any claim that all or part of this Agreement is void or voidable.

MAA at 1 (emphasis in original).

The arbitration is to be conducted by a single arbitrator, in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association. MAA at 2. If the employee initiates the arbitration, he is required to pay the initial filing fee (capped at $225), but thereafter Starbucks will pay the remaining fees, including its own filing fees, administrative fees, and the arbitrator's fees. *Id*. at 2, § (a)

The arbitrator will "have the authority to award the same damages and other relief that would have been available in court pursuant to applicable law," MAA at 1, including equitable relief. *Id*. at 2, § (e)(iv). In addition, the arbitrator will have the power to dismiss claims on motion, "consistent with Rules 12 and 56 of the FRCP," and will "decide all disputes related to discovery." *Id*. at 2, §§ (e)(ii)-(iv).

### C.      Plaintiff's Medical Leaves and Job Termination

It appears that plaintiff moved to New York in August or September 2024. *See* Marangwanda Decl. ¶ 18. On September 30, 2024, he commenced work at a Starbucks store in New York City. *Id.*; *see also* Compl. at 1 (plaintiff "worked in Starbucks' New York region"). Then, in early 2025, plaintiff requested and received medical leave, through Sedgwick Claims Management Services, Inc. (Sedgwick), "from February 2025 until March 28, 2025." Marangwanda Decl. ¶ 20.[3] In April 2025, plaintiff requested additional medical leave. *Id.*; *see also* Compl. at 2 ("Plaintiff became ill and filed a Sedgwick disability-leave claim effective April 16 2025."). According to Starbucks, plaintiff's extended leave application was approved through May 27, 2025, but not beyond that date, "because of Plaintiff's failure to submit paperwork required by Sedgwick." Marangwanda Decl. ¶ 20. Starbucks asserts that plaintiff's employment was terminated for "failure to return from his leave of absence." *Id.* ¶ 21. According to plaintiff, Sedgwick's records "confirm continuous leave through August 11 2025." Compl. at 2. Nonetheless, plaintiff asserts, his employment was unlawfully terminated, on August 8, 2025, for "job abandonment." *Id.*

### D.      Procedural History

Plaintiff filed his Complaint on October 22, 2025, together with a motion for a temporary restraining order (TRO), seeking "[i]mmediate relief . . . to preserve evidence and prevent further retaliation." (Dkt. 3 at ECF p. 1.) On October 29, 2025, the Hon. Paul A. Engelmayer, United States District Judge referred the case to me for general pretrial management. (Dkt. 8.) On December 1, 2025, Starbucks waived service, making its response to the Complaint due January 20, 2026 (Dkt. 16), and on December 3, 2025, Starbucks appeared through counsel. (Dkt. 17.)

---

[3] Sedgwick is a "third-party provider" that "administer[s] leaves of absences for Starbucks employees on behalf of Starbucks." Marangwanda Decl. ¶ 19.

Plaintiff then made a series of motions in rapid succession, including a motion for leave to serve early discovery (Dkt. 19), which defendant opposed (Dkt. 24) and I denied (Dkt. 28); a motion seeking, *inter alia*, leave to participate in this action "exclusively through written submissions and written orders," rather than attending in-person or remote court proceedings (Dkt. 30, at 3), which I also denied (Dkt. 32); and a motion for a "limited administrative stay" of this action pending the resolution of his objections to my prior orders (Dkt. 33, at 1), which I granted in part by adjourning the initial case management conference in this action – originally scheduled for January 7, 2026 – to February 19, 2026. (Dkt. 36.)[4]

On January 8, 2026, defendant filed its motion to dismiss plaintiff's ADA claim and to compel arbitration, supported by a memorandum of law (Def. Mem.) (Dkt. 40), the Marangwanda declaration, and the declaration of Glenn S. Grindlinger (Grindlinger Decl.) (Dkt. 38). As to the ADA claim, defendant argues that it should be dismissed because plaintiff failed to exhaust his administrative remedies by filing a timely charge with the Equal Employment Opportunity Commission (EEOC), as required by law. Def. Mem. at 5-6; *see also* Grindlinger Decl. ¶ 4 ("To date, Defendant has not received notice from the EEOC that Plaintiff filed a charge of discrimination."). Defendant further argues that plaintiff should be compelled to arbitrate all of his claims (including his ADA claim, if not dismissed) as required by the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.* Def. Mem. at 6-13. Finally, defendant asks that this Court dismiss the case entirely – because all of plaintiff's claims are arbitrable – or, in the alternative, stay the case pending the completion of the arbitration. *Id.* at 13-14.

Later that same day, plaintiff filed his opposition brief. Pl. Opp. (Dkt. 43). He does not deny that he entered into the MAA as part of his onboarding process, nor that all of his claims fall within the broad scope of that arbitration agreement. Instead, he argues that Starbucks

---

[4] Plaintiff's TRO motion remains pending before the District Judge.

waived its right to compel arbitration by "engaging in litigation-stage conduct fundamentally inconsistent with that right, including merits briefing, submission of fact-disputed declarations, and continued post-notice retaliation following formal litigation notice," Pl. Opp. at 1, and that this is a "**gateway question of arbitrability reserved to the Court**, not an arbitrator." *Id*. at 2 (all emphases in original unless otherwise noted). Plaintiff further argues that, even if his claims are otherwise compelled to arbitration, this Court should "retain jurisdiction over preservation, spoliation, and injunctive relief[.]" *Id*. at 3. Plaintiff explains that these are "matters of judicial process, not private contract," and asserts that "Rule 37(e) sanctions, preservation orders, and adverse inference determinations are powers vested **exclusively in Article III courts** and cannot be delegated by agreement." *Id*. Plaintiff does not contest the validity or enforceability of the MAA on any other grounds.

On January 16, 2026, defendant filed its reply brief, arguing that it did not waive its right to arbitration because – among other things – the first and only motion it has made in this action is the motion now before the Court, which it filed "twelve days prior to its deadline to respond to the Complaint." Def. Reply (Dkt. 45) at 2-3. As to plaintiff's claims for "preservation, spoliation, and injunctive relief," Starbucks points out that, under the MAA, the arbitrator will be able to order any remedies that this Court could order, including discovery sanctions and injunctive relief. *Id*. at 5. Lastly, defendant notes that plaintiff failed entirely to address the branch of its motion asking that his ADA claim be dismissed, and argues that he has therefore waived his right to oppose the dismissal. *Id*. at 7.

II.    **ORDER OF ANALYSIS**

Defendant asks the Court to dismiss plaintiff's ADA claim pursuant to Fed. R. Civ. P. 12(b)(6), and then to compel arbitration of his remaining claims (including the ADA claim, if not dismissed outright) pursuant to the FAA and Fed. R. Civ. P. 12(b)(1). Def. Mem. at 1, 5.

6

However, "a district court should generally rule on a motion to compel arbitration before proceeding to a merits-based motion to dismiss." *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 181 (S.D.N.Y. 2018), *aff'd*, 837 F. App'x 841 (2d Cir. 2021) (summary order). This is true even where, as here, defendant has a strong argument that one or more of plaintiff's claims is legally insufficient. *See, e.g.*, *Garnes v. Pritchard Indus., Inc.*, 2023 WL 3980693, at *5 (S.D.N.Y. May 23, 2023) ("Before assessing Pritchard's challenges to the timeliness and legal sufficiency of Mr. Garnes' claims, the Court addresses the threshold issue of whether his claims are subject to mandatory arbitration[.]"), *adopted*, 2023 WL 3977882 (S.D.N.Y. June 13, 2023); *Pepaj v. Innovative Facility Serv.*, 2024 WL 5146112, at *6-11 (S.D.N.Y. Dec. 17, 2024) (analyzing motion to compel arbitration of plaintiff's Title VII claim before considering motion to dismiss that claim pursuant to Rule 12(b)(6) for failure to file a timely EEOC charge). Consequently, as in *Pepaj*, 2024 WL 5146112, at *6, "I begin with the motion to compel arbitration."

III.    **MOTION TO COMPEL ARBITRATION**

    A.    **Legal Standards**

Under the FAA, agreements between parties to arbitrate their disputes are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. In analyzing a motion to compel arbitration, the court must determine (i) whether the parties agreed to arbitrate and (ii) whether their claims are within the "scope" of the arbitration agreement. *Abdullayeva v. Attending Homecare Servs*. LLC, 928 F.3d 218, 221 (2d Cir. 2019); *accord ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002).[5] If these requirements are met, the court must "direct[] the parties

---

[5] In some cases, the court must also consider whether the plaintiff's federal statutory claims are exempt from the reach of the FAA. *Abdullayeva*, 928 F.3d at 221. That is not an issue here. It is well-settled that individual claims under the ADA, the FMLA, and ERISA are arbitrable. *See*

to proceed to arbitration in accordance with the terms of the agreement," 9 U.S.C. § 4, and stay litigation of the issues found "referable to arbitration" until "such arbitration has been had in accordance with the terms of the agreement[.]" *Id.* § 3; *see also Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested.").[6]

When faced with a motion to compel arbitration, the court properly "considers all relevant admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (cleaned up); *see also Sanchez v. Clipper Realty, Inc.*, 638 F. Supp. 3d 357, 366 (S.D.N.Y. 2022) ("Courts routinely consider documents outside the pleadings when evaluating motions to compel arbitration[.]").

Generally, "a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide," *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002), unless the parties have "clearly and unmistakably" provided otherwise. *Id.* at 83 (citation omitted); *see also PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198-99 (2d Cir. 1996) ("[T]he arbitrability of a given issue is a question for the court *unless* there is

---

*Oglivie v. Spar Mktg. Force, Inc.*, 2025 WL 3227639, at *6 (S.D.N.Y. Nov. 19, 2025) ("[E]mployment discrimination claims under the ADA are arbitrable.") (collecting cases); *Feuer v. Stoler of Westbury, Inc.*, 2021 WL 4820605, at *4 (E.D.N.Y. Oct. 15, 2021) (ADA and FMLA claims are arbitrable); *Shafer v. Stanley*, 2023 WL 8100717, at *20 (S.D.N.Y. Nov. 21, 2023) ("Second Circuit law makes clear that compulsory arbitration of ERISA claims is lawful.").

[6] Although a motion to compel arbitration "goes to the Court's power to hear a case," *Harris*, 338 F. Supp. 3d at 181, "[s]ection 4 of the FAA, and not Rule 12(b), is the procedurally proper framework under which to evaluate [such a] motion." *Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 246 n.2 (E.D.N.Y. 2016).

'clear and unmistakable' evidence from the arbitration agreement . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator.") (citation omitted). In order to determine whether the parties "clearly and unmistakably" delegated the question of arbitrability to the arbitrator, the court looks at the language of the arbitration agreement and asks whether it "supports the inference of an intention to arbitrate arbitrability." *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019).

In this case, the arbitration agreement "clearly and unmistakably" delegates all questions regarding its validity and the scope to the arbitrator. *See* MAA at 1 ("[T]the Arbitrator – and not a court or agency – shall have exclusive authority to resolve any dispute regarding the formation, interpretation, applicability, enforceability, or implementation of this Agreement[.]"). However, the primary "gateway dispute" raised by the plaintiff is his contention that Starbucks waived its right to arbitrate by "engaging in litigation-stage conduct fundamentally inconsistent with that right[.]" Pl. Opp. at 1. Plaintiff is correct that this particular gateway question is "**reserved to the Court**, not an arbitrator." *Id.* at 2. As the Second Circuit explained in *Meyer*, "[b]ecause [the] waiver argument is based on defendants' defense of this litigation in the district court, we conclude that is a question for the district court rather than an arbitrator." 868 F.3d at 81; *see also Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 456 (2d Cir. 1995) ("[W]here the waiver defense was based on prior litigation by the party seeking arbitration . . . the court should decide the issue of waiver[.]"); *Desarrolladora La Ribera v. Anderson*, 2024 WL 5186600, at *16 (S.D.N.Y. Dec. 20, 2024) ("Whether a party has waived its right to arbitration by participating in litigation is a question for the Court.").

Under federal law – which applies to the waiver question – a waiver may be found if the party moving to compel arbitration "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022); *accord*

*Brown v. Peregrine Enters., Inc.*, 2023 WL 8800728, at \*3 (2d Cir. Dec. 20, 2023) (summary order). "Waiver of a contractual right, including the right to arbitrate, 'is not to be lightly inferred.'" *Desarrolladora La Ribera*, 2024 WL 5186600, at \*16 (quoting *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995)); *accord BakeMark USA LLC v. Negron*, 2025 WL 2845758, at \*8 (S.D.N.Y. Sept. 29, 2025); *Herrera v. Manna 2nd Ave. LLC*, 2022 WL 2819072, at \*8 (S.D.N.Y. July 18, 2022). Consequently, "[t]he party opposing the motion to compel arbitration bears the burden of showing waiver." *Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 528 (S.D.N.Y. 2024).

In considering a waiver argument, courts in this Circuit – post-*Morgan* – focus on two factors: (1) "the time elapsed from when litigation was commenced until the request for arbitration," and (2) "the amount of litigation to date, including motion practice and discovery[.]" *Diaz-Roa*, 757 F. Supp. 3d at 528 (quoting *Brevard v. Credit Suisse*, 2024 WL 36991, at \*8 (S.D.N.Y. Jan. 3, 2024)). "In assessing the amount of litigation activity," courts properly "evaluate any motion practice in which the parties have engaged and the extent of discovery that the parties have exchanged." *Wortham v. Total Transportation Corp.*, 2024 WL 4449411, at \*4 (E.D.N.Y. Oct. 2, 2024). "There is no bright-line rule, however, for determining when a party has waived its right to arbitration: the determination of waiver depends on the particular facts of each case." *Johnson v. Ensite USA, Inc.*, 2022 WL 463381, at \*4 (S.D.N.Y. Feb. 15, 2022) (citation omitted).

If the court determines that "some, but not all of the claims in the case are arbitrable," it must consider "whether to stay the balance of the proceedings pending arbitration." *Abdullayeva*, 928 F.3d at 221-22. "That decision is one left to the district court . . . as a matter of its discretion to control its docket." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983); *accord BakeMark USA,* 2025 WL 2845758, at \*8. In such a case, the court properly

10

considers "factors such as the desirability of avoiding piecemeal litigation and the degree to which the cases necessitate duplication of discovery or issue resolution." *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 110 (S.D.N.Y. 2017) (quoting *Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*, 2011 WL 1465744, at \*5 (S.D.N.Y. Apr. 15, 2011)). "A discretionary stay is particularly appropriate where there is significant factual overlap between the remaining claims and the arbitrated claims." *Winter Invs., LLC v. Panzer*, 2015 WL 5052563, at \*11 (S.D.N.Y. Aug. 27, 2015); *see also BakeMark USA*, 2025 WL 2845758, at \*16 (staying non-arbitrable counterclaims that arose out of the same facts as the arbitrable claims, making it "wildly inefficient for the parties to proceed on two tracks simultaneously"). "Additionally, stay orders are favored where 'the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit.'" *BakeMark USA,* 2025 WL 2845758, at \*9 (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987), *abrogated on other grounds by Rodriguez-Depena v. Parts Auth., Inc.*, 877 F.3d 122, 124 n.1 (2d Cir. 2017)).

"A motion to compel arbitration is within the authority of a magistrate judge to 'hear and determine' pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a)." *BakeMark USA*, 2025 WL 2845758, at \*5 n.5; *accord Legal Recovery Assocs. LLC v. Brenes L. Grp., P.C.*, 2023 WL 1382134, at \*1 n.2 (S.D.N.Y. Jan. 31, 2023) (collecting cases).

### B.    Analysis

#### 1.    The Parties Agreed to Arbitrate

It is clear from the evidence placed before the Court by defendant – none of which plaintiff contests – that plaintiff entered into the MAA as a condition of his employment at Starbucks, thereby agreeing to arbitrate all claims, whether federal, state, or local, "relating to [his] employment" at Starbucks, including claims concerning "compensation, harassment,

11

discrimination, retaliation, recovery of bonus or relocation benefits, leaves of absence, accommodations, or termination of employment." MAA at 1.

The fact that plaintiff electronically signed the MAA, as part of Starbucks' onboarding process, does not make his signature any less effective than if he had signed in ink. *See Oglivie*, 2025 WL 3227639, at *5 n.7 ("Courts consistently enforce electronically-signed arbitration agreements.") (collecting cases). Indeed, courts in this Circuit have enforced the electronically-signed Starbucks MAA even where (unlike here) the company was unable to present "the actual arbitration Agreement that [plaintiff] signed." *Palmer v. Starbucks Corp*., 735 F. Supp. 3d 407, 417 (S.D.N.Y. 2024) (concluding that the "detailed information" about the onboarding process provided by Starbucks, combined with the attached records from Palmer's employment file, "overwhelmingly establishes that an arbitration agreement existed with Palmer prior to him commencing his employment with Starbucks, even without Defendants providing the actual signed agreement"); *see also Armstead v. Starbucks Corporation*, 2017 WL 5593519, at *6 (S.D.N.Y. Nov. 17, 2017) (rejecting plaintiff's claim that she was "deliberately tricked" into electronically signing the Starbucks arbitration agreement, and finding that she "unambiguously consent[ed] to the agreement by electronically signing it" as part of the onboarding process). I therefore conclude that a valid agreement to arbitrate exists between the parties.

### 2.    All of Plaintiff's Claims are Within the Scope of the MAA

As noted above, the parties' arbitration agreement clearly and unmistakably gives the arbitrator the authority to arbitrate arbitrability, including questions as to scope of that agreement. *See* MAA at 1 ("[T]the Arbitrator – and not a court or agency – shall have exclusive authority to resolve any dispute regarding the formation, interpretation, applicability, enforceability, or implementation of this Agreement[.]"); *Palmer*, 735 F. Supp. 3d at 419 (concluding that this language "clearly delegates the question of arbitrability to the arbitrator").

Where, as here, the parties have agreed to arbitrate disputes over "whether their agreement covers a particular controversy," *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010), the courts must enforce that agreement, "save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* (quoting the FAA, 9 U.S.C. § 2). Consequently, plaintiff's argument that this Court should retain jurisdiction over any portion of his claims – including those seeking spoliation sanctions, preservation orders, and injunctive relief, *see* Pl. Opp. at 3 – is addressed to the wrong forum.

The result would be no different if this Court were to determine the scope question itself. The parties agreed to arbitrate all claims "relating to [plaintiff's] employment," including claims concerning "retaliation," "leaves of absence," "accommodations," and "termination of employment." MAA at 1. All of the claims that plaintiff has asserted in this action relate to his Starbucks employment. Moreover, he expressly alleges unlawful "retaliation," interference with his "protected leave," "[f]ailure to accommodate," and unlawful "termination during short-term disability leave to interfere with benefits." Compl. at 1-4. Consequently, all of plaintiff's claims are within the scope of his arbitration agreement.[7]

Plaintiff's effort to distinguish his claim for spoliation sanctions and his request for "court-supervised injunctive relief" from the remainder of his case, on the ground that "these are matters of **judicial process**, not private contract," Pl. Opp. at 3, is unavailing. Plaintiff has not alleged *any* claims arising from "matters of private contract." Moreover, the MAA does not distinguish between contract claims and other types of employment-related claims.

---

[7] If an arbitration agreement is genuinely ambiguous about "'whether it covers the dispute at hand,'" any "doubts concerning the scope of [the] arbitration clause should be resolved in favor of arbitration." *Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011) (quoting *Granite Rock Co. v. Int'l Bd. of Teamsters*, 561 U.S. 287, 301 (2010)). In this case, however, there is no ambiguity in the broad language of the MAA, and thus no need to resort to the presumption in favor of arbitrability.

Plaintiff's concern appears to be that the arbitrator will "lack authority to enforce litigation holds, supervise ESI preservation, or impose Rule 37(e) sanctions," Pl. Opp. at 3, or to issue the kind of injunctive relief necessary to "prevent ongoing statutory violations and litigation misconduct." *Id*. at 4. But the MAA expressly gives the arbitrator the authority to "decide all disputes relating to discovery," MAA at 2, § (e)(iii), and "award the same damages and other relief that would have been available in court pursuant to applicable law," *id*. at 1, including equitable relief. *Id*. at 2, § (e)(iv).

In *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.*, 564 F.3d 81 (2d Cir. 2009), the Court of Appeals held that similar language in an arbitration agreement "confers inherent authority on arbitrators to sanction a party that participates in the arbitration in bad faith and that such a sanction may include an award of attorney's or arbitrator's fees." *Id*. at 87; *see also*, *e.g*., *Macquarie Holdings (U.S.A.), Inc. v. McLaughlin*, 2020 WL 6806706, at \*3 (S.D.N.Y. Nov. 19, 2020) (finding that the arbitrator "acted within the scope of his authority" when he ordered a party to pay "attorney's fees and sanctions under Federal Rules of Civil Procedure 11 and 37"); *Claybrook v. Sunoco GP LLC*, 2023 WL 2664740, at \*5 (E.D. Tenn. Mar. 28, 2023) (concluding that evidentiary sanction imposed by arbitrator as a remedy for spoliation of electronic evidence was "appropriate under Federal Rule of Civil Procedure 37(e)(1)," and confirming arbitrator's award). Thus, even if the parties had not delegated questions of arbitrability to the arbitrator, this Court would require plaintiff to arbitrate all of the claims set forth in his Complaint, because they all fall within the scope of the MAA.[8]

---

[8] As noted above, Rule 37(e) does not provide a plaintiff with a cause of action in any court, including this one. Under the MAA, however, it will be up to the Arbitrator (if Starbucks makes the appropriate motion) to dismiss the claim on the ground that "no relief can be granted." MAA at 2, § (e)(ii).

### 3.    Starbucks Did Not Waive the Right to Arbitrate

Plaintiff's waiver argument borders on the frivolous. Starbucks first appeared in this action on December 3, 2025. On December 17, 2025, it advised the Court by letter that it opposed any early discovery and "intends to file a motion to compel arbitration on or before January 20, 2025 consistent with Defendant's deadline to respond to the Complaint." (Dkt. 24, at 2.) Three weeks and one day later, on January 8, 2026, Starbucks filed the instant motion. In the interim, it filed no answer, asserted no affirmative defenses, made no motions, and engaged in no discovery. Thus, neither "the amount of time elapsed" before it moved to compel arbitration nor "the amount of litigation" it conducted during that period, *see Diaz-Roa*, 2024 WL 4866450, at *10, was "inconsistent" with its current motion, much less suggested that Starbucks "knowingly relinquish[ed]" its right to arbitrate plaintiff's claims. *Morgan*, 596 U.S. at 419; *see also*, *e.g.*, *Desarrolladora La Ribera*, 2024 WL 5186600, at *16 (rejecting waiver argument, even though six months elapsed before DLR filed its motion to compel arbitration of certain counterclaims, because during that period DLR "filed no answer, asserted no affirmative defenses, made no motions (other than its extension applications), sought no discovery, and did nothing else that could be characterized as 'litigating' the Raizada/TRG counterclaims").

In plaintiff's telling, Starbucks "**affirmatively invoked this Court's merits jurisdiction** by filing Rule 12 motions, submitting declarations disputing facts, and seeking dispositive relief before invoking arbitration." Pl. Opp. at 2. However, the only "Rule 12" motion (indeed, the only motion of any sort) that defendant has ever filed in this action is the motion now before the Court: a  motion to compel arbitration. And while it is true that the same motion asks this Court to dismiss plaintiff's ADA claim under Rule 12(b)(6), it is well-settled that making a Rule 12(b)(6) motion contemporaneously with a motion to compel arbitration (or even in advance of that motion) is not grounds for a finding of waiver. *See, e.g.*, *Poletti v. Pepsi-Cola Bottling Co. of*

15

*New York, Inc.*, 2023 WL 5769498, at \*4 (S.D.N.Y. Sept. 6, 2023) (rejecting waiver argument and compelling arbitration where, even though the moving party waited a year to file its motion to compel, the parties "have not yet begun discovery and have only engaged in substantive motion practice related to a motion to dismiss and the present motion to compel arbitration"); *In re Generali COVID-19 Travel Ins. Litig.*, 577 F. Supp. 3d 284, 294 (S.D.N.Y. 2021) (rejecting waiver argument and compelling arbitration where the proceedings to date "have primarily involved the consolidation of these different lawsuits into a consolidated complaint and the preparation of a motion to dismiss and a separate motion to compel arbitration"); *Murray v. UBS Sec.,* 2014 WL 285093, at \*6 (S.D.N.Y. Jan. 27, 2014) (rejecting plaintiff's argument that defendants' "initial decision to file a motion to dismiss is itself a sufficient basis on which to find waiver," and compelling arbitration); *Mahmoud Shaban & Sons Co. v. Mediterranean Shipping Co., S.A.*, 2013 WL 5303761, at \*2 (S.D.N.Y. Sept. 20, 2013) ("[I]t is well established that ACC's choice to file a motion to dismiss before moving to compel arbitration does not in itself waive ACC's right to enforce the arbitration clause after the motion to dismiss is resolved.").

Likewise, while it is true that Starbucks "submitt[ed] declarations," Pl. Opp. at 2, it did so for the express purpose of placing the MAA before the Court and otherwise supporting the instant motion. Needless to say, a defendant cannot waive the right to arbitration by making an adequately supported motion to compel arbitration. Plaintiff has therefore failed to carry his "burden of showing waiver." *Diaz-Roa*, 757 F. Supp. 3d at 528.

### 4. Stay

"Pursuant to the FAA, if a matter is arbitrable, a stay of the litigation is entered pending completion of the arbitration." *Xiaohong v. Dingledine*, 2025 WL 1604001, at \*12 (S.D.N.Y. June 6, 2025) (citing 9 U.S.C. § 3). Here, all of plaintiff's claims are arbitrable. Consequently, this action will be stayed in its entirety.

The Court would reach the same conclusion even if some of plaintiff's claims – for example, his claim under Rule 37(e) for spoliation sanctions – were non-arbitrable. Not only is there "significant factual overlap" among all of his claims, *Winter Invs.*, 2015 WL 5052563, at *11; the Rule 37(e) claim is "of questionable merit," *BakeMark USA,* 2025 WL 2845758, at *9, in that "Rule 37 does not create a cause of action." *Mazzei*, 2020 WL 7774492, at *9. A broad stay would thus be appropriate in order to "preserve both judicial and party resources, guard against duplicative discovery . . . and 'avoid[] possible inconsistent results.'" *Desarrolladora La Ribera*, 2024 WL 5186600, at *25 (quoting *Spurlock v. Thomson Reuters Am. Corp.*, 2022 WL 604066, at *6 (S.D.N.Y. Mar. 1, 2022)); *accord Xiaohong*, 2025 WL 1604001, at *12.

## IV.    CONCLUSION

For the reasons stated above, defendant's motion to compel arbitration (Dkt. 37) is GRANTED, and this action is STAYED, in its entirety, pending the completion of the arbitration. Defendant is directed to submit an update letter no later than July 20, 2026, advising the Court as to the status of arbitration.

Dated: New York, New York
       January 20, 2026                          **SO ORDERED.**

_____

**BARBARA MOSES**
**United States Magistrate Judge**

17